UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:20-CV-00814-DJH-LLK

JEFF WELLEMEYER                                                 PLAINTIFF

v.

TRANS UNION, LLC, *et al.*                                  DEFENDANTS

**OPINION & ORDER**

Judge David J. Hale referred this matter to U.S. Magistrate Judge Lanny King for resolution of all litigation planning issues, a scheduling conference, entry of scheduling orders, consideration of amendments thereto, and resolution of all non-dispositive matters, including discovery issues. [DN 4].

This matter is currently before the Court on Defendant's Motion to Compel Production of Settlement Agreements and for Sanctions. [DN 85]. In its motion, Defendant argues that the settlement agreements between the Plaintiff and the former co-defendants are relevant to the case and therefore discoverable pursuant to the "one satisfaction rule." *Id.* Plaintiff responded, arguing that the settlement agreements were not admissible pursuant to the Federal Rules of Evidence, and in the alternative, that the one satisfaction rule did not apply here. [DN 90]. Having received the Plaintiff's and Defendant's briefings on the issues, the motion is now fully briefed and ripe for adjudication.

The Court finds that the settlement agreements for which the Defendant has moved to compel disclosure are relevant to this case pursuant to the one satisfaction rule. Because this Court finds the documents relevant, they are discoverable. The Defendant's Motion for Sanctions, however, is without merit. For the reason set forth herein, the Defendant's Motion to Compel, [DN 85], is **GRANTED in part and DENIED in part.**

## Background

This case arises out of an allegedly derogatory reference to an account being in collection, delinquent and unpaid by the Plaintiff. [DN 36]. The Plaintiff "is the owner and manager of a one hundred-million-dollar resort in the West Indies and four other companies which he is trying to run in the middle of a pandemic." [DN 1 at 4]. The Plaintiff allegedly failed to return cable equipment after cancellation of his account on June 1, 2018. *Id.* As a result, a "derogatory reference" was placed on the Plaintiff's credit report, and his rating was demoted from "good" to "fair". [DN 1 at 5] This capped his monthly spending at $70,000, causing him "significant cash flow problems[.]" *Id.* After discovering this change, the Plaintiff took steps which resulted in an investigation into the validity of the statements made by the various co-Defendants. [DN 36 at 3-4]. "Pursuant to an investigation (re-investigation) … this account was deleted by all three consumer reporting agencies; two of which [were] Defendants in this litigation." *Id.* However, "on or about September 14, 2020 Plaintiff noticed that the same Charter Communications account to be reinserted by Defendants…" had been reported by a different debt collector, Defendant IC System, Inc. *Id.* This caused previous co-defendants to reinsert the deleted account in Plaintiff's consumer file reports "without a furnisher of said information certifying that the information was complete and accurate." *Id.* "upon discovering the reinsertion … Plaintiff again disputed the account to Defendants… requesting an investigation." *Id.* After reinsertion of the account, and the subsequent drop in Plaintiff's credit rating, the Plaintiff provided lenders with credit report and credit scores. *Id.* at 5. Plaintiff believes that the credit score, based upon allegedly erroneous information, "impacted the finance rate paid" thus harming the Plaintiff. *Id.*

Following commencement of this case, Plaintiff has settled with each co-defendant except ICS. [DN 33; DN 58; DN 66]. ICS now seeks to compel Plaintiff to "supplement his responses to ICS' second set of Requests for Production (RFPs")", served on January 5, 2022, which seeks the final settlement agreements resolving Plaintiff's claims, against the other Defendants, or any other individuals/entities." [DN 85 at 2]. Defendant also moves for sanctions in the form of the fees and costs incurred in relation to the filing of this motion, under Rule 37(a)(3)(B)(iv), Rule 37(a)(4), and Rule 37(a)(5), "because Plaintiff's objections to the RFPs at issue are legally baseless, and not in good faith, justifying the requested sanctions." *Id.*

The Defendant's motion thus asks the court to analyze several issues. First, the Court will discuss the legal standards regarding discovery. Second, the Court will discuss the discoverability of settlement agreements specifically. Third, the Court will discuss the "one satisfaction rule," its contours, and its effects on the present Motion. Finally, the Court will address the motion for sanctions against the Plaintiff.

## Discussion

1. **Discovery**

Parties may obtain discovery of any non-privileged matter that is deemed relevant to a particular claim and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Specifically, "[a] party may serve on any other party a request within the scope of Rule 26(b) to produce and permit the requesting party or its representative to inspect, copy, test, or sample… any designated documents or electronically stored information." Fed. R. Civ. P.

34(a)(1)(A). Relevance means "any matter that may bear upon, or reasonably could lead to other matters that could bear upon any issue that is or likely may be raised in the case." *Corizon Health, Inc. v. Correcteck*, 2017 WL 7693390 (W.D. Ky. 2017) (quoting *Ross v. Jack Rabbit Servs.,* LLC, 2015 WL 13547855 (W.D. Ky. Oct. 21, 2015)).

The party resisting production "has the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure." *Invesco Int'l (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007); *Polylok, Inc. v. Bear Onsite, LLC*, 312CV00535DJHCHL, 2017 WL 1102698, at *3 (W.D. Ky. Mar 23, 2017) ("The burden … rests with the party objecting to the motion to compel to show in what respects the discovery requests are improper."). Further, "a request for discovery should be considered to be seeking relevant information if there is any possibility that the information sought may be relevant to the claim or defense of any party in the action." *Id*. Basically, this creates the default presumption that the requesting party is acting in good faith and that the requested information is relevant until proven otherwise irrelevant or injurious.

If the nonmoving party resists a discovery request, he may object. Objections, however, must be specific to the request. That is, they must not be "boilerplate" objections. *Janko Enterprises, Inc. v. Long John Silver's, Inc.*, No. 3:12-CV-345-S, 2013 WL 5308802 (W.D. Ky. Aug. 19, 2013). This means that "[t]he mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection." *Kafele v. Javitch, Block, Eisen & Rathbone*, No. CIV.A. 2:03-CV-638, 2005 WL 5095186, at *2 (S.D. Ohio Apr. 20, 2005).

### A. Discoverability of Settlement Agreements

This Court has repeatedly held that relevant settlement agreements are discoverable. *Rogers v. Webstaurant Store, Inc.*, 2018 WL 6728575 at *3 (W.D. Ky. 2018) (citing *Westlake Vinyls, Inc. v. Goodrich Corp.*, 2007 WL 1959168 at *3 (W.D. Ky. 2007)); *Schnatter v. 247 Group, LLC*, WL 5346516 at *6 (W.D. Ky. 2021). As the Defendant points out in its briefing of this Motion, a plethora of Sixth Circuit cases affirm the contention that settlement agreements are in fact discoverable. *See NOCO Co. v. Shenzen Dika Na'er E-commerce Co.*, 2019 WL 9093481, at *2 (N.D. Ohio 2019) (internal citations omitted). It is therefore well settled law that settlement agreements are discoverable, assuming they meet the other threshold requirements of discoverability.

Here, it is undisputed that the Plaintiff has settled all other claims with each named co-defendant. [DN 33; DN 58; DN 66]. The remaining Defendant, ICS, seeks a Court order compelling, *inter alia*, Plaintiff to produce its settlement agreements with parties previously identified as co-defendants. [DN 85]. Specifically, Defendant seeks "the final settlement agreements resolving Plaintiff's claims, against the other Defendants, or any other individuals/entities." [DN 85 at 2]. In Plaintiff's responses to Defendant's requests, these materials were not produced, thus resulting in this motion. *Id.* Plaintiff argues that "settlements, compromises, and offers to compromise are generally not admissible under the Federal Rules of Evidence." [DN 90 at 2]. According to the Plaintiff, this is true because of "the public policy favoring the compromise and settlement of disputes." *Id.* This contention, however, runs directly contrary to the law, which establishes that settlement agreements are indeed discoverable.

Settlement agreements are discoverable, when relevant to the pending case. Further, it is undisputed that the documents being sought by Defendant are settlement agreements. These

5

documents are being sought by Defendant in order to limit the damages that the Defendant will have to pay in the event that it must pay anything at all. If the "one satisfaction rule" applies here, then Defendant may receive an offsetting credit for the amounts paid in prior settlement agreements, thus reducing the amount of damages owed by the Defendant. For these reasons, in order to make a determination that the settlement agreements are relevant to a damages determination it is necessary to analyze the next question, i.e., whether the "one satisfaction rule" applies to the Fair Credit Reporting Act (hereinafter "FCRA") both broadly speaking, as well as in this particular case. If it does, then the potential amount owed by the Defendant would be reduced based upon the proportions paid in each of the settlement agreements, thus making them relevant to the Defendant's litigation strategy and calculation of liability.

### B. The "One Satisfaction Rule" and the FCRA

The parties have not cited, and we have not found any cases from the Sixth Circuit, or from district courts within the Sixth Circuit, directly applying the one satisfaction rule to the FCRA. It is, however, important to define the principle at issue before deciding on its application. The Defendant cites, and this Court finds persuasive, the reasoning in *Williams*, a case from the Northern District of Alabama which applied the one satisfaction rule to the FCRA. *See Williams v. LVNV Funding, LLC*, No. 4:15-CV-2219-KOB, 2017 WL 1331014 (N.D. Ala. Apr. 11, 2017). To the extent applicable, this Court has followed the reasoning in *Williams* and finds accordingly. Before discussing the application of the reasoning in *Williams*, however, it is important to explain the one satisfaction rule and its contours.

Broadly speaking, the one satisfaction rule states that "a person can sue any number of parties, and obtain a judgment against any one, or several of them, but can gain but one satisfaction, even though that party may pursue numerous possible avenues of relief

6

simultaneously and may obtain several judgments against different persons for the same obligation or liability. 47 Am. Jur. 2d Judgments § 769. That is, a plaintiff may pursue separate judgments against defendants that are jointly and severally liable for the full amount of the plaintiff's damages, but, under the one satisfaction rule, may recover only one satisfaction for those losses. *Id.*

Caselaw has refined this principle somewhat, stating that "there is a long-standing and well-entrenched principle in tort law that 'a plaintiff is entitled to only one satisfaction for the same wrong.'" *Payne v. Markeson*, No. WD 77553, 2015 WL 2090268, at *11 (Mo. Ct. App. May 5, 2015). Further, "under the common law, when a 'judgment for a wrong is rendered against one who is a joint tortfeasor, and the judgement is satisfied, the plaintiff cannot recover another satisfaction for the same wrong.'" *Id.* (quoting *Gibson v. City of St. Louis*, 349 S.W.3d. 460, 465-66 (Mo.App.E.D.2011) (internal citation omitted). "Generally, plaintiffs are not entitled to a double recovery of compensatory damages." *Echols v. City of Riverside*, 332 S.W.3d 207, 212 (Mo.App.W.D.2010). This Court recognizes the non-binding nature of the above cases; however, they are useful in outlining and defining the relevant principle of law.

The United States Supreme Court has also opined on the matter, stating that "the one satisfaction rule comes into play only if one assumes that the percent share of liability apportioned to [a particular defendant] really represented [that defendant's] contributory fault, and that it would be over compensatory for [that defendant] to receive more than the percentage of the total loss allocated to the defendants[.]" *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 218, 114 S. Ct. 1461, 1470, 128 L. Ed. 2d 148 (1994). It is important to note, however, that the Court elaborated on the above concept, holding that even when using the proportionate share approach would result in over compensation "the law contains no rigid rule against overcompensation[,]"

and that "several doctrines, such as the collateral benefits rule, recognize that making tortfeasors pay for the damage they cause can be more important than preventing overcompensation." *Id.*

Several Kentucky cases have also dealt with this matter. In a case where an insured injured in an auto accident settled with the alleged tortfeasor and his employer by executing a general release, then sought declaratory judgment and damages against her insurer for no-fault benefits, the Kentucky Supreme Court affirmed, holding that the old common law rule that the release of one joint tortfeasor discharged all other joint tortfeasors was not the present-day rule unless the release specifically named the other joint tortfeasors. *Ohio Cas. Ins. Co. v. Ruschell*, 834 S.W.2d 166, 168 (Ky. 1992). In a personal-injury action against joint tortfeasors arising from a motor vehicle accident where one defendant settled before trial, and the trial court attributed 25% of the legal causation to the remaining defendant, allowing credit on the judgment for the amount paid by the other defendant in settlement, the Kentucky Supreme Court held that in tort actions involving the fault of more than one party, an apportionment instruction, if requested, must be given whereby the jury will determine the amount of damages and the degree of fault to be allocated to each part; therefore, the remaining defendant was liable for an amount equal to his degree of fault and not entitled to credit for any amount paid by the settling defendant found not to be at fault. *Stratton v. Parker*, 793 S.W.2d 817, 823 (Ky. 1990).

The caselaw and persuasive authority clearly establish that the one satisfaction rule applies to tort cases. See *Payne v. Markeson*, No. WD 77553, 2015 WL 2090268 (Mo. Ct. App. May 5, 2015); *Sanders v. Ahmed*, 364 S.W.3d 195, 213 (Mo. Banc 2012); *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 218, 114 S. Ct. 1461, 1470, 128 L. Ed. 2d 148 (1994); *Ohio Cas. Ins. Co. v. Ruschell*, 834 S.W.2d 166, 168 (Ky. 1992); *Stratton v. Parker*, 793 S.W.2d 817, 823 (Ky. 1990); Restatement (Second) of Torts § 885 (1979) (citing *Seymour v. Summa Vista Cinema,*

*Inc.*, 809 F.2d 1385, 1389 (9th Cir.), *amended,* 817 F.2d 609 (9th Cir. 1987). The question then becomes whether the FCRA falls within the scope of the one satisfaction doctrine. That is, does the FCRA impose tort liability.

The Supreme Court and various Circuit Courts have discussed the FCRA and tort law principles together. Specifically, the Court cited, in an FCRA case, the Restatement of Torts. *Spokeo, Inc. v. Robins*, 587 U.S. 330, 341, 136 S.Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), as *revised* May 24, 2016. This strongly suggests the general applicability of tort law principles in FCRA cases. Another Circuit has also recognized the applicability of general tort principles to the FCRA. *See Reynolds v. Hartford Fin. Serv. Group, Inc.*, 435 F.3d 1081 (9th Cir. 2006) (determining that joint and several liability under the FCRA furthers the statute's consumer protection goals) (*overruled on other grounds by Safeco Ins. Co. of Am. V. Burr*, 551 U.S. 47, 127 S.Ct. 2201m 167 L.Ed.2d 1045 (2007). The Supreme Court has further held that "when Congress creates a tort action, it legislates against a legal background of ordinary tort-related [tort principles] and consequently intends its legislation to incorporate those rules." *Meyer v. Holley*, 537 U.S. 280, 285, 123 S. Ct. 824, 828, 154 L. Ed. 2d 753 (2003). Courts therefore "assume Congress 'is familiar with the common-law rule and does not mean to displace it *sub silentio*' in federal causes of action." *Bank of America Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1305, 197 L. Ed. 2d 678 (2017). As a result, this Court finds persuasive the argument that the one satisfaction rule is a tort law principle applicable to the FCRA in the present case.

C. Application of the One Satisfaction Rule to this Case

At present, the Plaintiff's complaint alleges that "[o]n or about April 22, 2019 Plaintiff obtained his consumer reports and noticed that they each contained a derogatory reference to an account being in collection, delinquent and unpaid and reported at the time by non-Defendant

debt collector, Credit management, LP, allegedly owed to Defendant Charter Communications, LLC., in the amount of $1153." [DN 36 at 3]. This account was "the result of [Plaintiff's] alleged failure to return cable equipment after he cancelled his account[.]" *Id.* As a result, Plaintiff's credit rating was changed from "good" to "fair" allegedly resulting in a cap being placed on his monthly spending, thus causing him "significant cash flow problems by requiring him to find additional cash resources in a COVID environment which has continued to put his business operations at risk." *Id.* at 5. This description, coupled with the three claims, none of which are exclusively against ICS, suggest that the injury here was a singular one that resulted from a specific transaction or series of transactions taken by the parties originally listed as co-defendants. *Williams v. LVNV Funding, LLC*, No. 4:15-CV-2219-KOB, 2017 WL 1331014, at *2 (N.D. Ala. Apr. 11, 2017) (holding "the relevant inquiry for purposes of the one-satisfaction rule is not whether the *conduct* is distinct but whether the *injury* is distinct."). While the conduct that gave rise to the Plaintiff's reduced credit score varied, the ultimate harm that resulted – namely, the Plaintiff's reduced credit rating – was a singular one. The singular nature of this injury places this dispute squarely within the gamut of the one satisfaction rule, which, as established above, applies to the FCRA. *See Williams v. LVNV Funding,* LLC, No. 4:15-CV-2219-KOB, 2017 WL 1331014, at *1 (N.D. Ala. Apr. 11, 2017); *Payne v. Markeson*, No. WD 77553, 2015 WL 2090268 (Mo. Ct. App. May 5, 2015); *Sanders v. Ahmed*, 364 S.W.3d 195, 213 (Mo. Banc 2012); *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 218, 114 S. Ct. 1461, 1470, 128 L. Ed. 2d 148 (1994); *Ohio Cas. Ins. Co. v. Ruschell*, 834 S.W.2d 166, 168 (Ky. 1992); *Stratton v. Parker*, 793 S.W.2d 817, 823 (Ky. 1990); Restatement (Second) of Torts § 885 (1979) (citing *Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1389 (9th Cir.), *amended,* 817 F.2d 609 (9th Cir. 1987).

Using the Federal Rules of Evidence, the Plaintiff contends that the one satisfaction rule is inapplicable to the FCRA. Specifically, the Plaintiff argues that "[e]vidence is relevant only if 'tending to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" [DN 90 at 2]. Plaintiff cites several cases which propose that motions to compel settlement agreements have been rejected in FCRA cases because they are not relevant to discovery. [DN 90 at 3]. These cases, however, deal almost exclusively in the admissibility of settlement agreements, or indemnification, not the one satisfaction rule's applicability to the FCRA. *Id.* For example, the Plaintiff's use of *Sloane* is inapposite. *Sloane* held that the one satisfaction rule was inapplicable because the defendant there had not suffered a "'single, indivisible harm' that has already been redressed by other parties." *Sloane v. Equifax Information Services, LLC*, 510 F.3d. 495, 501 (4th Cir. 2007). The *Sloane* fact pattern is different from the present case because the present case involves an injury that was caused by the same transaction or series of transactions and resulted in a single harm. *Id.*; *see also Williams*, 2017 WL 1331014 (holding that the important inquiry in this regard is the nature of the harm, not the conduct which resulted in the harm.). The Plaintiff also cites, *Pennington*, in support of his argument. [DN 90 at 3 citing *Pennington v. Midland Credit Mgmt., Inc.*, No. 1:10CV112, 2010 WL 3187955 (E.D. Va. Aug. 9, 2010)]. The *Pennington* court, however, specifically held that the movant "fail[ed] to show that the acts *and injuries* are the same." 2010 WL 3187955, at *1 (E.D. Va. Aug. 9, 2010). Here, the movant has done just that. The Plaintiff claims that "the issues for a potential jury here are whether IC System violated 15 U.S.C. § 1681s-2(b) and the amount of damages it caused by these violations." [DN 90 at 2]. Plaintiff further claims that he is not seeking any other damages from

11

any other party *Id.* While this may be true, it remains unclear precisely how the Defendant's conduct resulted in an injury that is distinguishable from the general reduction in the Plaintiff's credit rating and access to capital. 2017 WL 1331014 at *1 (holding "regardless of how many violations of the FCRA occurred [a plaintiff] is not entitled to recover for the same injury, even if two different violations could be said to have caused that injury."). This fact remains true regardless of how egregious the Plaintiff believes the Defendant's conduct was in comparison to the former co-defendants.

Again, the one satisfaction rule provides that "a plaintiff is entitled to only one satisfaction for a single injury, such that amounts received in settlement from an alleged tortfeasor are credited against judgments for the same injury against non-settling tortfeasors." *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1276 (11th Cir. 2008). "Regardless of how many violations of the FCRA occurred [a plaintiff] is not entitled to recover for the same *injury*, even if two different violations could be said to have caused that injury." 2017 WL 1331014, at *1. That is, a plaintiff's injury must be "single" and "indivisible." *Id.* In this respect, the relevant inquiry is not whether the conduct is distinct, i.e., the co-defendants engaged in distinct actions, but instead whether the injury resulting from those actions is distinct. *Id.* To this Court, it appears that the Defendant's conduct did not differ substantially from the parties previously listed as co-defendants, and the injury that resulted to the Plaintiff from the Defendant's conduct is not unique to that conduct specifically. The Plaintiff's injury appears to be a singular one, the reduction of his credit rating, which resulted from the various actions taken by several co-parties. For these reasons, the Court finds that the one satisfaction rule does apply to the FCRA, and that it must be applied in this case.

Despite the above analysis, this Court recognizes two potential issues regarding its decision. First, an order to compel production of the settlement agreements at this stage in the litigation could arguably be deemed premature because a judgment has not yet been rendered. Second, this decision could arguably raise concerns regarding future settlements and a party's incentive to settle, only to have that settlement agreement made public later. To the first point, this Court feels that there is no efficiency in delaying the discovery once it has been determined that the desired materials are relevant. The *Williams* court came to the same conclusion, and this Court agrees with its reasoning. *See Williams* 2017 WL 1331014. To the second point, this Court orders the settlement agreements and the information contained therein are to be used solely for the purposes of this litigation and not to be disclosed to any third party for any other purpose.

Ultimately, the District Judge will determine whether the one satisfaction rule applies to this case. However, for discovery purposes, based on the current record and the authority cited by the parties, it appears that the one satisfaction rule applies. Therefore, the settlement agreements are relevant and discoverable. They may, however, not be disclosed to any third party for any reason, nor may they be used for purposes other than for this litigation.

2. **Rule 37 Sanctions**

The Defendant has also moved for Rule 37 Sanctions against the Plaintiff. [DN 85]. Specifically, the Defendant argues that the "Plaintiff's vehement refusal to disclose the settlement agreements at issues to ICS is legally baseless and not in good Faith." *Id.* at 10. The Defendant supports this argument by merely referencing "all of the foregoing" i.e., the Plaintiff's refusal to disclose the information requested by the Defendant. In light of the relevant statutory provision and case law, this Court disagrees with the Defendant's contention, and is therefore inclined to deny the Defendant's motion for sanctions.

Rule 37 states that, as a general matter, "a party may move for an order compelling disclosure or discovery." Fed.R.Civ.P. 37 (a)(1). "If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions. Fed.R.Civ.P. 37 (a)(1)(A).

> "Rule 37 allows a court to award sanctions when a Rule 30(b)(6) designee fails to appear for a deposition or when a party, properly served with interrogatories and requests for production, 'fails to serve its answers, objections, or written response.' Fed.R.Civ.P. 37(d)(1)(A)(i)-(ii). It may impose the type of sanctions described in Rule 37(b)(2)(A)(i)-(iv), which includes rendering a default judgment, or it may also 'require the party failing to act, the attorney advising that party, or both to pay reasonable expenses, including attorney's fees caused by the failure.' *Id.* § 37(d)(3). Conversely, the target of the sanctions motion may avoid responsibility by showing that 'the failure was substantially justified or other circumstances make an award of expenses unjust.' *Id.*"

*Ira Green, Inc. v. U.S. Cavalry Store, Inc.*, No. 3:10-CV-00444-R, 2011 WL 1458784, at *1 (W.D. Ky. Apr. 15, 2011).

The key component of the analysis here is the degree to which the Plaintiff's withholding of the settlement agreements is in good faith. Given that the Defendant has not alleged any deliberate attempt to conceal, nor has he provided evidence of any intentionally deceitful action, this Court finds no reason to believe that the Plaintiff's nondisclosure is not in good faith. Discovery disputes arise in every litigated case, a party's decision not to disclose information alone is insufficient to constitute bad faith. For this reason, the Defendant's Motion for Sanctions is **DENIED**.

## Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED:** Defendant's Motion to Compel the Settlement Agreements between the Plaintiff and the former co-Defendants is **GRANTED**, and Defendant's Motion for Sanctions is **DENIED.** [DN 85]. Plaintiff shall produce its settlement agreements with the parties previously listed as co-defendants. The settlement agreements produced are to be used exclusively for the purposes of this litigation, and shall not be disclosed to any third parties.

**IT IS SO ORDERED.**

May 23, 2022

**Lanny King, Magistrate Judge**
**United States District Court**

c:      Counsel of Record